## Nomination Petitions for Judgeships

SCHNADER, Attorney General, July 30, 1931.—We have your request to be advised whether it is your duty to accept and file nomination petitions designating as candidates for the office of justice of the Supreme Court of Pennsylvania, judge of the Court of Common Pleas of Allegheny County or judge of the County Court of Allegheny County persons whose occupations are

stated to be either carpenter, or welder, or salesman, or housewife, or machinist, or journalist, or plumber.

We understand that nomination petitions have been proffered in which it is stated that the "profession, business or occupation" of the candidate is one of those specified.

Under the Act of April 15, 1851, P. L. 648, justices of the Supreme Court must be "learned in the law."

Under article v, section five, of the Constitution, and the Act of May 21, 1931, P. L. 167, judges of the Court of Common Pleas of Allegheny County must be learned in the law.

Under section two of the Act of May 5, 1911, P. L. 198, as amended, judges of the County Court of Allegheny County must, likewise, be learned in the law.

The expression "learned in the law" has a well-known and well-understood meaning. To be learned in the law, a person must be an attorney or counselor at law.

In Freiler *v.* Schuylkill County, 46 Pa. Superior Ct. 58, in an opinion by Judge Orlady, our Superior Court interpreted this expression. Judge Orlady said, at page 62:

"It has been held that the term 'learned in the law' means that the person is 'either admitted or entitled to be admitted without examination to practice as an attorney at law in the state.' The term 'learned in the law' clearly indicates an intention to prescribe some sort of an educational qualification, and should be given some practical effect; and therefore no one is eligible as a judge who is not, when elected, either admitted or entitled to be admitted, without examination, to practice as an attorney at law. To be learned in the law means that the person must have been ascertained by a competent tribunal prior to his election or appointment: Jamieson *v.* Wiggin, 12 S. D. 16, 80 N. W. Repr. 137, 46 L. R. A. 317, 76 Am. St. Rep. 585; Howard *v.* Burns, 14 S. D. 383, 85 N. W. Repr. 920."

Our Primary Act requires that every candidate must make an affidavit, "stating his residence, with street and number, if any, and his postoffice address, his election district, the name of the office for which he consents to be a candidate, *that he is eligible for such office,* and that he will not knowingly violate any election law . . . :" Section 6 (b) of the Act of July 12, 1913, P. L. 719, as amended.

On the face of the petitions out of which your inquiry arises, the affidavits of the candidates that they are eligible to the offices respectively of justice of the Supreme Court, judge of the Court of Common Pleas of Allegheny County and judge of the County Court of Allegheny County, are false affidavits. A carpenter is not eligible for election to any of the offices mentioned. Neither is a salesman, a welder, a machinist, a journalist, a plumber, or a housewife. To be eligible the candidate must be a lawyer.

Under these circumstances, the nomination petitions on their face are defective in that the proposed candidates are ineligible to the offices for which they aspire. Were the nomination petitions to be accepted and the candidates nominated and elected, it would clearly be the duty of the Attorney General forthwith to institute quo warranto proceedings to have the persons elected ousted from office because of their ineligibility.

It is our opinion that the nomination petitions in question should be refused. It is true that the acceptance of nomination petitions is a matter in which the Secretary of the Commonwealth acts as a ministerial and not as a discretionary officer, but in the exercise of his ministerial duties he does have the

right to decline to receive a petition which is defective on its face: Hamilton *v.* Johnson, 293 Pa. 136. Thus, in the case cited, the Supreme Court sustained the right of the Secretary of the Commonwealth to refuse to receive a nomination petition which had an inadequate number of signatures giving the names and addresses of the signers. If a petition filed on behalf of an eligible candidate may be rejected because of defects in its execution which appear on the face of the petition, we entertain no doubt of your right to reject a petition when it appears upon the face of the petition that the candidate is ineligible, under the Constitution and laws of this Commonwealth, to the office which he seeks. See Beaver's Petition, 29 Dist. R. 245, and Roberts's Petition, 2 D. & C. 236.

A question almost identical to that which you raise was decided by the Supreme Court of Minnesota in State *v.* Schmahl et al., 125 Minn. 533, in which a layman filed a nomination petition for judge of one of the district courts of Minnesota. The statute authorized only eligible persons to file as candidates, and the Constitution required judges of the district courts to be "learned in the law."

The Supreme Court of Minnesota, in holding that the name of the layman could not be placed on the ballot as a candidate, said, at page 534:

"Beyond question the framers of the Constitution used the last five words quoted in the sense of attorneys at law, and this view has since been uniformly accepted. The few authorities on the subject are to the same effect. See Jamieson *v.* Wiggin, 12 S. D. 16; Freiler *v.* Schuylkill County, 46 Pa. Superior Ct. 58. The matter does not merit further discussion."

Accordingly, you are advised that you may decline to file the nomination petitions in question.                    From C. P. Addams, Harrisburg, Pa.